IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
LABORATORY SKIN CARE, INC.     :
and ZAHRA MANSOURI,            :
                               :
         Plaintiffs,           :
                               :
   v.                          :  Civil Action No. 06-601-JJF
                               :
LIMITED BRANDS, INC.           :
and BATH AND BODY WORKS, LLC,  :
                               :
         Defendants.           :
                               :
```

E. Anthony Figg, Esquire; Sharon L. Davis, Esquire and C. Nichole Gifford, Esquire of ROTHWELL, FIGG, ERNST & MANBECK PC, Washington, D.C.
Josy W. Ingersoll, Esquire; Melanie K. Sharp, Esquire and Karen E. Keller, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Attorneys for Plaintiffs Laboratory Skin Care, Inc. and Zahra Mansouri.

John F. Ward, Esquire; David M. Hill, Esquire and Michael J. Zinna, Esquire of WARD & OLIVO, New York, New York.
Francis G.X. Pileggi, Esquire and Sheldon K. Rennie, Esquire of FOX ROTHSCHILD LLP, Wilmington, Delaware.

Attorneys for Defendants Limited Brands, Inc. and Bath & Body Works, LLC.

**MEMORANDUM OPINION**

August 17, 2009
Wilmington, Delaware.

Farnan, District Judge.

Pending before the Court is the Motion Of Plaintiffs Laboratory Skin Care, Inc. And Zahra Mansouri To Strike Defendants' Motion For Summary Judgment Of Unenforceability. (D.I. 184.)  For the reasons discussed below, the Court will grant Plaintiffs' Motion.

## I.  BACKGROUND

This is a patent infringement case brought by Laboratory Skin Care, LLC and Zahra Mansouri against Limited Brands, Inc. and Bath and Body Works, LLC, alleging infringement of United States Patent Nos. 6,579,516 ("the '516 patent"), which pertains to formulations for cleansing and moisturizing the skin.

Plaintiffs filed their Complaint (D.I. 1) on September 26, 2006, alleging infringement of the '516 patent.  Defendants filed their Answer with Counterclaim (D.I. 10) on October 19, 2006, alleging therein the affirmative defense of unenforceability due to inequitable conduct.  Defendants pleaded this inequitable conduct defense as follows:

> The '516 patent is unenforceable due to inequitable conduct based upon repeated breaches of the duty of candor and good faith owed to the United States Patent and Trademark Office ("USPTO") by the inventors and/or assignees during the procurement of the '516 patent. Among other things, the inventor and/or assignee failed to advise the USPTO that compositions substantially similar to those claimed by the '516 patent have been well known in the personal care industry since more

1

than a year before the filing date of the application
which led to the '516 patent.

(D.I. 10 ¶ 17.)

On December 5, 2006, the Court issued a Scheduling Order
(D.I. 21) calling for the parties to file amendments to pleadings
by June 28, 2007 and for discovery to end on October 5, 2007.
The Court subsequently amended the Scheduling Order (see D.I. 57)
to extend the deadline for document discovery to June 11, 2008
and depositions to August 11, 2008, with dispositive Motions due
on September 10, 2008. Neither party filed amendments to their
pleadings, and, on September 10, 2008, Defendants filed a Motion
For Summary Judgment Of Unenforceability (D.I. 122) due to
inequitable conduct. Both parties submitted briefing on that
Motion, and concurrently with their Opposition to that Motion,
Plaintiffs filed the instant Motion To Strike. (D.I. 184.)

The theory of inequitable conduct set forth in Defendants'
Motion For Summary Judgment does not appear to match the theory
of inequitable conduct pleaded in their Answer. Briefly, the
basis of Defendants' Summary Judgment Motion is that Ms. Mansouri
and her patent attorney failed to disclose to the examiner of the
application that resulted in the '516 patent a parallel patent
application by Ms. Mansouri, United States Patent App. Ser. No.
08/885,057 (the "'057 application"). On at least eight
occasions, three different USPTO examiners rejected the claims of
the '057 application, which are similar to the claims of the '516

patent.[1]  Given this similarity, Defendants' contend that this
rejection history is highly material to the prosecution of the

---

[1]  A side-by-side comparison of a representative claim from
the '057 application and a representative claim of the '516
patent is as follows:

| Claim 50 of '057 application | Claim 1 of '516 patent |
|---|---|
| A moisturizing composition for applying to and leaving on human skin, the composition in the form of a nonirritating, antimicrobial lotion that comprises: | A moisturizing composition for applying to and leaving on human skin, the composition in the form of an antimicrobial lotion composition comprising: |
| (a) an antimicrobial agent present in an amount effective to kill microorganisms present on the skin, wherein the antimicrobial agent is triclosan; | (a) an amount of triclosan effective to kill microorganisms present on the skin; |
| (b) an emollient present in an mount effective to moisturize the skin and substantially prevent skin irritation; and | (b) an emollient present in an amount effective to moisturize the skin; and |
| (c) a lotion base comprised of a physiologically and cosmeceutically acceptable vehicle | (c) a lotion base comprised of a physiologically and cosmeceutically acceptable vehicle |
| wherein said components of said lotion are present in amounts sufficient to provide a nonirritating, effective antimicrobial lotion. | wherein said components of said lotion are present in amounts sufficient to provide an effective antimicrobial lotion. |

(D.I. 159, Exh. K; U.S. Patent No. 6,579,516 col.14 l.9-21 (filed
Nov. 28, 2000.))

'516 patent and should have thus been revealed to the examiner of the '516 patent.  In this regard, Defendants rely on the Federal Circuit decision McKesson Info. Solutions, Inc. v. Bridge Med., Inc., 487 F.3d 897 (Fed. Cir. 2007).  In McKesson, the Federal Circuit affirmed the lower court's ruling of inequitable conduct when the prosecuting attorney failed to disclose to the patent examiner rejections of substantially similar claims in a separate application in front of a different examiner.  Id. at 910-11. According to Defendants, McKesson is analogous to this case.

## II.  PARTIES' CONTENTIONS

Plaintiffs contend that Defendants' Motion For Summary Judgment Of Unenforceability is improper because Defendants have yet to plead the particular theory of inequitable conduct set forth in their Motion For Summary Judgment.  In fact, Plaintiffs contend that Defendants raised this particular theory of inequitable conduct for the first time in their Motion For Summary Judgment - well after both the deadline for amendment of pleadings and the close of discovery.  Plaintiffs further argue that, at this late stage of the proceedings, Defendants should not be given leave to amend their pleadings because, under Federal Rule of Civil Procedure 16(b), all changes to the Scheduling Order are only to be given with good cause and Defendants cannot show good cause for an amendment.

In response, Defendants note that they pleaded the defense of inequitable conduct in their Answer. To the extent the substance of their pleading does not match the theory of inequitable conduct asserted in their Motion For Summary Judgment, Defendants request that the Court apply Rule 9(b) "flexibly." (D.I. 176 at 9.) Defendants maintain that a flexible application of Rule 9(b) is particularly appropriate here because Plaintiffs allegedly withheld - until the final day of document production - a deposition transcript from a previous litigation where the attorney who prosecuted both the '057 application and '516 patent, Mr. Bret Field, explained as follows:

> I . . . file a second application with claims directed to the same subject matter so that in case something happens with the first case, I will still have another case that is pending. Say something happens adversely in the first, I may be able to convince another Examiner of my position.

(D.I. 134, Exh. AL at 117:15-23.) This withholding was critical, Defendants argue, because it was this transcript and the subsequent deposition of Mr. Field that yielded enough evidence for Defendants to plead their theory of inequitable conduct with the requisite particularity.

In the alternative, Defendants, in their Opposition to Plaintiffs' Motion To Strike, request that the Court allow them to amend their pleading because they were diligent in obtaining and confirming the necessary facts required to plead their

inequitable conduct claim with sufficient particularity. This is the first request Defendants have made to amend their pleadings to include this particular inequitable conduct defense.

**III. DISCUSSION**

Pursuant to Rule 9(b), as a defense based on fraud, Defendants must plead inequitable conduct with particularity. See Ferguson Beauregard/Logic Controls v. Mega Sys., LLC, 350 F.3d 1327, 1344 (Fed. Cir. 2003). Without such a pleading, a party may not raise, as an affirmative defense, inequitable conduct in a motion for summary judgment. See ADC Telecom., Inc. v. Siecor Corp., 954 F. Supp. 820, 826 (D. Del. 1997) (holding that an affirmative defense not properly pleaded in an answer or amended answer cannot be raised for the first time on summary judgment).

On reviewing Defendants' Answer, the Court concludes that it simply does not support the particular theory of inequitable conduct in Defendants' Motion For Summary Judgment. Indeed, the theory of inequitable conduct in Defendants' Answer vaguely asserts that the patentee failed to disclose that compositions similar to those claimed in the '516 patent were known in the art. No mention, however, is made of Ms. Mansouri's parallel '057 application and its attendant history of rejection by the USPTO.

Defendants nevertheless contend that the Court should overlook this because they could not have pleaded this theory of inequitable conduct with the required particularity before the summary judgment phase of the proceedings.[2] Specifically, as noted above, Defendants argue that without the Field deposition transcript - which Plaintiffs allegedly withheld until the close of discovery - they could not have pleaded the inequitable conduct defense set forth in their Summary Judgment Motion. Defendants go so far as to claim that they did "not have any of the necessary information to plead their current theory of inequitable conduct with more particularity" than they did in their Answer. (D.I. 176 at 9 (emphasis in original).) In these circumstances, Defendants contend that the Court should "apply Rule 9(b) flexibly and find that [Defendants] have plead[ed] inequitable conduct sufficiently." (D.I. 176 at 9.)

The Court is unpersuaded. In the Court's view, Defendants have had numerous previous opportunities to plead inequitable conduct with sufficient particularity. First, in support of their Motion For Summary Judgment, Defendants point to the file histories of the '057 application and the '516 patent as "highly

---

[2] In order to prove unenforceability of a patent by inequitable conduct, Defendants must "provide clear and convincing evidence of (1) affirmative misrepresentations of material fact, the failure to disclose material information, or submission of false material information and (2) an intent to deceive." Impax Labs., Inc. V. Aventis Pharms., Inc., 468 F.3d 1366, 1374 (Fed. Cir. 2006).

Case 1:06-cv-00601-LPS  Document 206  Filed 08/17/09  Page 9 of 13 PageID #: 3522

material" evidence supporting their inequitable conduct defense. (D.I. 123 at 14.) These "highly material" file histories are publically available from the USPTO, and Defendants could have acquired them on their own immediately after this litigation began.³ In the Court's view, a review of these file histories would have provided Defendants sufficient information to plead their present inequitable conduct defense theory with particularity. However, no such pleading was present in Defendants' Answer. Second, to the extent Defendants failed to look to the public record for these file histories, Plaintiffs produced the file histories on the first day of discovery. (D.I. 157, Exh. 6.) Therefore, Defendants had these "highly material" documents in their possession and had an opportunity to amend their Answer at that time, but they did not. Third, given Defendants' argument that McKesson is factually analogous to this case, to the extent Defendants may have been uncertain as to the legal viability of their inequitable conduct defense, the issuance of McKesson would have removed any such doubt and motivated a request to amend. However, when the Federal Circuit issued McKesson on May 18, 2007 – more than one month before the amendment deadline – Defendants took no action to amend their

---

³ Even if, for some reason, the file histories of the '057 application and/or '519 patent were not publically available, the Court's conclusion would remain unchanged given the numerous additional opportunities Defendants had to seek an amendment of their Answer.

Answer.  McKesson, 487 F. 3d at 897.  In fact, Defendants could have moved to amend at any time during the more than one year period between Plaintiffs' production of the file histories and the close of discovery.  They did not.  Fourth, immediately after discovery of Mr. Field's transcript, which was allegedly one day before the close of discovery, Defendants had yet another opportunity to amend their Answer and plead their new theory of inequitable conduct.  At this time, they had both the "highly material" file histories and what they believed to be direct evidence of intent to deceive the USPTO.  Again, Defendants took no action.  Fifth, Defendants had another opportunity to seek to amend after the deposition of Mr. Field, where Mr. Field purportedly confirmed that it was his practice in some cases to file multiple patent applications in hope that one or more would be granted.  Indeed, Defendants argue that it was this deposition testimony that was required to plead this new theory of inequitable conduct.  Yet, Defendants did not move to amend, and have otherwise provided no explanation as to why they failed to do so.  Sixth, Defendants could have moved to amend in conjunction with their Motion For Summary Judgment, which they should have known rested on an unpleaded theory of inequitable conduct.  Of these six opportunities to amend, Defendants availed themselves of none of them, instead waiting to request amendment of their Answer until filing their Opposition to Plaintiffs'

Motion To Strike. In this regard, Defendants effectively ask the Court to ignore the Federal Rules of Civil Procedure that pertain to pleadings and instead permit them to raise for the first time a novel defense in a summary judgment motion. The Court is not persuaded.

As noted, despite numerous previous opportunities, Defendants did make a request to amend their pleading in their Opposition to Plaintiffs' Motion To Strike. As to this request, the Court notes that in this case a Scheduling Order has been in place for some time. In these circumstances, to amend a pleading, the movant must show "good cause." Fed. R. Civ. P. 16(b). Central to a showing of "good cause" is diligence on the part of the movant.

In arguing that they were sufficiently diligent, Defendants rely on Enzo Life Sci., Inc. v. Digene Corp., 270 F. Supp. 2d 484 (D. Del. 2003). However, the Court finds Enzo Life to be distinguishable from this case. Indeed, in the Court's view, Enzo Life illustrates that Defendants did not act with diligence. In Enzo Life, the defendant moved to amend to add the defense of inequitable conduct after taking the deposition of the inventors and the prosecuting attorney to confirm facts in support of their defense. Id. at 486. The court held that the inequitable conduct defense was "based on a new set of facts, which were recently confirmed by the depositions . . . ." In addition, the

10

Court noted that roughly three weeks after the depositions, which were taken shortly before the Christmas holiday season, the defendant initiated steps to remove confidentiality restrictions on the depositions, discuss them with their client, advise the plaintiff of their desire to amend, and, when plaintiff refused to stipulate to an amendment, formally move to amend. Id. at 489. Because the defense was based on a "new set of facts" and because defendant did not unduly delay in seeking amendment, the Court granted the motion to amend. Id. at 489. Here, however, unlike Enzo Life, the Court concludes that Defendants had sufficient information to plead their theory of inequitable conduct long before the Field deposition. More importantly, even after the Field deposition, Defendants did not diligently move to amend their Answer. Instead, unlike the Defendant in Enzo Life, Defendants waited until responding to Plaintiffs' Motion To Strike. Likewise, there is no indication that Defendants took any action to advise Plaintiffs that they would be seeking to amend their complaint to include an additional inequitable conduct defense. Although, Defendants supplemented numerous interrogatory responses as late as August 1, 2008, Defendants do not dispute that they failed to supplement their response to Defendants' Interrogatory No. 15, which specifically requested Defendants to "explain in detail the complete and factual basis for your contention that the '516 patent is unenforceable due to

11

inequitable conduct . . . ."   (D.I. 157, Exh. 3 at 8.)   In this regard, the Court finds that Defendants were not diligent in seeking to amend their complaint and that, in addition, Plaintiffs would be unfairly prejudiced if the Court were to - after the close of discovery and only a few months before the pre-trial conference  - grant Defendants' motion to amend.

## V.   CONCLUSION

For the forgoing reasons, the Court will grant Plaintiffs' Motion To Strike Defendants' Motion For Summary Judgment Of Unenforceability.   (D.I. 184.)