IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LABORATORY SKIN CARE, INC. and ZAHRA MANSOURI, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 06-601-LPS |
| LIMITED BRANDS, INC. and BATH AND BODY WORKS, LLC, | : : : | |
| Defendants. | : : | |

E. Anthony Figg, Esquire, Sharon L. Davis, Esquire, C. Nichole Gifford, Esquire, and Daniel Shores, Esquire of ROTHWELL, FIGG, ERNST & MANBECK PC, Washington, D.C.
Melanie K. Sharp, Esquire, Karen E. Keller, Esquire, and James L. Higgins, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Attorneys for Plaintiffs.

John F. Ward, Esquire, Michael J. Zinna, Esquire, and Patrick R. Closher, Esquire of WARD & ZINNA, New York, New York.
Francis G.X. Pileggi, Esquire of ECKERT SEAMANS CHERIN & MELLOTT, LLC, Wilmington, Delaware.
Sheldon K. Rennie, Esquire of FOX ROTHSCHILD LLP, Wilmington, Delaware.

Attorneys for Defendants.

## **MEMORANDUM OPINION**

September 8, 2011
Wilmington, Delaware.

**STARK, U.S. District Judge:**

Pending before the Court is Plaintiffs' Renewed Motion for Judgment as a Matter of Law or in the Alternative for a New Trial (D.I. 340), which Plaintiffs filed following the jury verdict. For the reasons discussed below, the Court declines to disrupt the jury's verdict and will deny Plaintiffs' motion.

## I.      BACKGROUND

This patent infringement action was brought by Plaintiffs Laboratory Skin Care, LLC and Zahra Mansouri ("Ms. Mansouri") (together, "Plaintiffs") against Defendants Limited Brands, Inc. and Bath and Body Works, LLC ("Defendants"), alleging that hand lotion products produced and sold by Defendants infringe United States Patent No. 6,579,516 ("the '516 patent" or "the patent-in-suit"). After a three-day trial,[1] the jury returned a verdict finding Claims 1-7 and 12-18 of the '516 patent invalid under the 35 U.S.C. § 102(b) on-sale bar. (*See* D.I. 328) The jury also concluded that Defendants directly infringed Claims 4-7 of the '516 patent and induced the infringement of Claims 13-18 of the '516 patent, but Defendants did not infringe Claim 2 nor induce infringement of Claim 13 of the patent-in-suit. (*Id.*) Finally, the jury determined that Claims 1-7 and 12-18 were not invalid for inadequate written description, anticipation, or obviousness. (*Id.*)

Following the verdict, on March 31, 2011 Plaintiffs filed a renewed motion for judgment as a matter of law and, alternatively, for a new trial. (D.I. 340) Briefing on this motion was competed on May 3, 2011. (*See* D.I. 341; D.I. 345; D.I. 347)

---

[1]The trial transcript appears in the record as D.I. 335, D.I. 336, D.I. 337, and D.I. 338. All citations to the trial transcript are in the format "Tr." followed by the page number.

Plaintiffs raise three grounds for the relief they seek: insufficient evidence supporting the jury's finding of a barring sale; erroneous jury instructions on both elements of the on-sale bar test; and expert testimony beyond the scope of the expert report. The Court is unpersuaded that the requested relief is warranted and, thus, will deny the motion.

## II.   LEGAL STANDARDS

### A.   Motion For Judgment As A Matter Of Law

To prevail on a renewed motion for judgment as a matter of law following a jury trial, the moving party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)); *accord Price v. Del. Dep't of Corr.*, 40 F. Supp. 2d 544, 549 (D. Del. 1999). In assessing the sufficiency of the evidence, the court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991); *see also Perkin-Elmer Corp.*, 732 F.2d at 893. The court may not evaluate the credibility of the witnesses, may not weigh the evidence, and may not substitute its view of the evidence for the jury's view. *See Price*, 40 F. Supp. 2d at 550. Rather, the court must determine whether the evidence reasonably supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms, Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998); *Gomez v. Allegheny Health Servs. Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995) (describing standard as "whether there is evidence upon which a reasonable jury could

2

properly have found its verdict"); 9A Wright & Miller, *Federal Practice & Procedure* § 2524 at

249-66 (3d ed. 1995) ("The question is not whether there is literally no evidence supporting the

party against whom the motion is directed, but whether there is evidence upon which the jury

properly could find a verdict for that party.").

### B.     Motion For A New Trial

In pertinent part, Federal Rule of Civil Procedure 59(a) provides:

> A new trial may be granted to all or any of the parties and on all or part of the
> issues in an action in which there has been a trial by jury, for any of the reasons
> for which new trials have heretofore been granted in actions at law in the courts of
> the United States.

Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the

clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice;

(2) newly discovered evidence exists that would likely alter the outcome of the trial; (3) improper

conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict was

facially inconsistent. *See Zarow-Smith v. N.J. Transit Rail Operations*, 953 F. Supp. 581, 584

(D.N.J. 1997).

The decision to grant or deny a new trial is committed to the sound discretion of the

district court. *See Allied Chem. Corp. v. Darflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading,*

*Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282 (1993) (reviewing district court's grant or denial of

new trial motion under deferential "abuse of discretion" standard). However, where the ground

for a new trial is that the jury's verdict was against the great weight of the evidence, the court

should proceed cautiously, because such a ruling would necessarily substitute the court's

judgment for that of the jury. *See Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993). Although the standard for grant of a new trial is less rigorous than the standard for grant of judgment as a matter of law – in that the court need not view the evidence in the light most favorable to the verdict winner – a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson*, 926 F.2d at 1352; *see also Price*, 40 F. Supp. 2d at 550.

## III.   DISCUSSION

### A.   On-Sale Bar

#### 1.   Applicable Legal Principles

In pertinent part, 35 U.S.C. § 102(b) states that "[a] person shall be entitled to a patent unless . . . the invention was . . . on sale in this country, more than one year prior to the date of application for patent in the United States." To trigger the on-sale bar under § 102(b), the alleged infringer must prove that the product sold "fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art." *Allen Eng. Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1352 (Fed. Cir. 2002). Therefore, an accused infringer must show that the product offered for sale "embodied all of the limitations of that claim or would have rendered that claim obvious." *Id.* In addition, the accused infringer must establish by clear and convincing evidence that, before the critical date, (1) the product was the subject of a commercial offer for sale and (2) the invention was ready for patenting. *See Pfaff v. Wells Elecs.*, 525 U.S. 55, 67 (1998). Under the first element of *Pfaff*, courts must determine whether there has been a commercial offer for sale by "applying traditional contract law principles." *Allen*, 299

4

F.3d at 1352. This first element may be further broken down into a two-step analysis. The Court

must determine, first, whether there was a commercial offer for sale and, second, whether that

offer was for the patented invention. *See Honeywell Int'l, Inc. v. Nikon Corp.*, 672 F. Supp. 2d

638, 645 (D. Del. 2009). The second element of *Pfaff*, the "ready for patenting" requirement,

"may be satisfied in at least two ways: by proof of reduction to practice before the critical date; or

by proof that prior to the critical date the inventor had prepared drawings or other descriptions of

the invention that were sufficiently specific to enable a person skilled in the art to practice the

invention." *Pfaff*, 525 U.S. at 67-68.

### 2.    Parties' Contentions

Plaintiffs argue that the jury's finding of an invalidating sale was not supported by

substantial evidence. (*See* D.I. 341 at 6) According to Plaintiffs, Defendants failed to present

evidence that the sold product met every limitation of the invalidated claims; in particular, they

argue that no evidence was adduced which indicated that the sold product was "effective to kill

microorganisms on the skin," an element of all fourteen claims in dispute. (*See id.*) Plaintiffs

view *in vitro* test results presented by Defendants as insufficient because the analytical tests were

performed on a sample taken before the product was bottled, and to Plaintiffs the record

establishes that the product was contaminated during the bottling process. (*See id.* at 6-7; D.I.

347 at 3-5) Also, Plaintiffs believe these tests are irrelevant because, as *in vitro* analyses, they

shed no light on the *in vivo* characteristic required by the claims. (*See* D.I. 341 at 6-7; D.I. 347 at

3) Without *in vivo* testing, Plaintiffs contend there is no way to know if a formula containing a

particular amount of triclosan would be effective, even if that amount of triclosan by itself is

effective, since other ingredients or contaminants in the product can degrade triclosan. (*See* D.I.

347 at 3) Plaintiffs argue that the only pertinent evidence of record on the characteristics of the bottled product is Plaintiffs' testimony that this product was contaminated. (*See* D.I. 341 at 7-8) Plaintiffs also fault Defendants for not engaging in an element-by-element analysis to show that the sold product contained all the elements of the claims. (*Id.* at 5) Finally, Plaintiffs assert that Defendants presented no evidence showing that the sold product contained the amount of triclosan required by four of the invalidated claims, leaving Plaintiffs' expert testimony that triclosan can be degraded the only relevant evidence on these limitations. (*Id.* at 8)

Defendants counter that they presented abundant evidence to show that the lotion which Plaintiffs sold was effective to kill microorganisms on the skin. (*See* D.I. 345 at 6) Defendants point to, among other things, the retain sample test results, testimony regarding those results, and results from tests performed on the retain sample eleven months after it was shipped. (*See id.* at 6-8) Defendants also argue that *in vitro* testing on the pre-bottled lotion provided the jury with sufficient evidence to conclude that the *in vivo* effectiveness of the bottled product met the requirements of the claims – those two inferences (i.e., the correlation between *in vitro* and *in vivo* effectiveness as well as between the pre-bottled lotion and bottled lotion characteristics) – could reasonably be drawn. (*See id.* at 9) Defendants assert that no expert testimony was necessary to help the jury interpret the test results. (*See id.* at 10) Finally, Defendants argue they provided the jury sufficient evidence from which to conclude that the sold product contained the triclosan amounts required by the claims, while Plaintiffs provided no evidence showing that the triclosan in the sold product had actually been degraded; instead, Plaintiffs only presented evidence that it could be degraded. (*See id.* at 10-11)

### 3.    Decision

The Court is unpersuaded that the jury lacked sufficient evidence to find a barring sale. The record contains substantial evidence from which the jury could reasonably conclude that the sold product – i.e., the bottled lotion – met the limitations of the invalidated claims. Plaintiffs' main contention is that no reasonable jury could infer from Defendants' evidence that the sold product was effective to kill microorganisms on the skin. Given the factual record in this case, however, the inferences which the jury must have drawn were reasonable.

All of the test data presented at trial pertained to retain samples of the sold lotion and are, therefore, not directly representative of the bottled product. Additionally, the tests performed on these samples were *in vitro* analyses, whereas the claim limitation in question articulates an *in vivo* characteristic. But the record – in particular the expert testimony – did not make it unreasonable to infer from the *in vitro* testing of the *pre-bottle* product the *in vivo* characteristics of the *bottled* product. Nothing in the record suggests that the *in vitro* characteristics of the pre-bottle product are unconnected to the *in vivo* qualities of the bottled product.

Plaintiffs direct the Court to portions of the testimony of their expert, Dr. Orth:

> Q. Thank you, sir. The claim that I have on the screen here has a requirement that the triclosan be there in an mount effective to kill microorganisms present on the skin. And it also has a requirement at the end that the triclosan be there in a range of .1 to 1 percent? How do those two requirements of the claim relate to one another?
>
> A. Well, in the first place, you have to have test data to show that the amount that is present in the product is effective. You can't just put in, let us say, .1, .3, .5 percent and expect it to work, because there may be ingredients in the formula that would interfere with its action and so the two requirements are that it has to have an effective level, and this product has .3 percent triclosan and it has to have been tested on skin to show that it actually works

7

in that formula.  And so it does meet those claims.

(Tr. at 192-93)  Here, Dr. Orth states that a product "has to have been tested on the skin to show

that [the triclosan] actually works in that formula" to kill microorganisms on the skin.  (*Id.* at

193)  But Dr. Orth never stated that *in vitro* testing cannot also indicate effectiveness.  His

testimony does not preclude inferring from the *in vitro* tests the *in vivo* effectiveness of the sold

product.  In fact, other portions of Dr. Orth's testimony make this inference all the more

reasonable:

> Q.  All right.  Dr. Orth, have you seen any information that
> indicates that Bath & Body Works has relied on these test results
> for the label claims that it makes for its product?
>
> A.  Yes.  These test results would corroborate the alcohol rub test
> which is what we call an in vivo.  In other words, that you use
> human subjects.  These were laboratory studies so we called these
> in vitro tests and these tests would corroborate the fact that the
> product is germicidal.

(*Id.* at 198)  Here, Dr. Orth told the jury that *in vitro* test results "would corroborate the fact that a

product is germicidal," i.e., that it kills microorganisms on the skin.  "That the offered product is

in fact the claimed invention may be established by any relevant evidence, such as memoranda,

drawings, correspondence, and testimony of witnesses." *Sonoscan, Inc. v. Sonotek, Inc.*, 936

F.2d 1261, 1263 (Fed. Cir. 1991) (internal quotations omitted).  Here, the *in vitro* test results are

relevant evidence which provided the jury a sufficient basis for its finding.

Plaintiffs also view as improper the jury's (implied) determination that the pre-bottled

samples were representative of the bottled product.  The jury heard testimony from Ms. Mansouri

that the product she sold was contaminated.  (*See, e.g.,* Tr. at 351-52)  The jury also saw test

8

results showing that the pre-bottled product was antimicrobial (PTX 189; DTX 1000 at 6084);

the Court must assume that the jury understood these tests were not performed on the bottled

product since they heard testimony to this effect (*see, e.g.,* Tr. at 297-98, 358-59, 362).

Additionally, Dr. Orth testified that the sold product could have been contaminated with a

troublesome bacterial strain, pseudomonas, during the bottling process. (*See* Tr. 508-13, 531-

32). The main issue in dispute at trial was whether the sold product was contaminated, and Ms.

Mansouri's credibility was at the center of this dispute. The jury was free to discredit Ms.

Mansouri's testimony and to infer from the pre-bottled samples that the bottled product was

effective to kill microbes on the skin, and further to conclude that although the product *could*

*have been* contaminated *during* bottling, it was, in fact, not.[2]  Given this string of inferences, to

which Defendants are entitled as verdict winners, the jury had substantial evidence to reach its

finding – namely, test results showing effectiveness of a product which was not contaminated

during bottling.[3]  (To find a baring sale, the jury needed to find clear and convincing evidence

that Plaintiffs sold only a single bottle of antimicrobial lotion, even if every other bottle sold was

contaminated). *See Electromotive Div. of GMC v. Transp. Sys. Div. of GE*, 417 F.3d 1203, 1209

(Fed. Cir. 2005) ("We need not consider whether the district court was correct as to all of these

---

[2]Plaintiffs also direct the Court to two pieces of evidence indicating that a related cleanser product yielded clean *in vitro* test results from a retain samples but bottled products which were contaminated. (*See* PTX 192; PTX 215) This evidence, however, did not compel a jury finding that all the bottled lotion product was contaminated.

[3]For this same reason, the jury had substantial evidence from which to find a barring sale of Claims 6, 7, 17, and 18 of the '516 patent, each of which requires that the claimed lotion have a triclosan concentration between 0.1 and 1.0 weight percent. The *in vitro* test results of the retain samples indicate that the sample contained 0.326 % triclosan (*see* PTX 189), which, assuming the product was not contaminated during bottling, would be the concentration of triclosan present in the bottled product.

sales because a single sale or offer for sale suffices to bar patentability.").

Since the jury had sufficient evidence on which to base their finding of a barring sale, the Court must and will uphold the verdict.

### B.    Jury Instructions Regarding On-Sale Bar

#### 1.    Applicable Legal Principles

An erroneous jury instruction may be grounds for granting a new trial when the error was prejudicial to the moving party. *See Harvey v. Plains Twp. Police Dep't.*, 635 F.3d 606, 612 (3d Cir. 2011) ("When a jury instruction is erroneous, a new trial is warranted unless such error is harmless.); *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1278 (Fed. Cir. 2011) ("[A] jury verdict will be set aside, based on erroneous jury instructions, if the movant can establish that those instructions were legally erroneous and that the errors had prejudicial effect."). On post-trial motions, challenges to jury instructions must be reviewed in the context of the overall instructions, not just a single sentence. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1331 (Fed. Cir. 2010) ("In reviewing jury instructions, the full trial record and the jury instructions in their entirety must be examined because instructions take on meaning from the context of what happened at trial, including how the parties tried the case and their arguments to the jury.") (internal quotation marks omitted); *Limbach Co. v. Sheet Metal Workers Int'l Ass'n, AFL-CIO*, 949 F.2d 1241, 1259 n.15 (3d Cir.1991). The jury instructions as a whole must fairly and adequately apprise the jury of the issues and the applicable law. *See Hurley v. Atlantic City Police Dep't.*, 174 F.3d 95, 115 (3d Cir. 1999) ("We review jury instructions to determine whether, taken as a whole, they properly apprised the jury of the issues and the applicable law.") (internal quotations omitted); *Tigg Corp.*

*v. Dow Corning, Corp.*, 962 F.2d 1119, 1123 (3d Cir. 1992). An otherwise proper jury verdict, however, should not be disturbed for an erroneous jury instruction that was harmless, that is, when "it is highly probable that the error did not affect the outcome of the case." *Forrest v. Beloit Corp.*, 424 F.3d 344, 349 (3d Cir. 2005).

### 2.    Parties' Contentions

Plaintiffs contend the Court's jury instruction regarding the on-sale bar was defective in two ways. Plaintiffs argue that the Court's instruction on the first element of the on-sale bar analysis, i.e., whether an invalidating offer for sale was made, was confusing and incomplete because it stated that Defendants were required to show by clear and convincing evidence that, "the ***product*** was the subject of a commercial offer for sale." (D.I. 326 at 23) (emphasis added) Plaintiffs fault the Court for rejecting their proposed instruction which stated that "an embodiment of the claimed invention" must have been the subject of an offer for sale. (*See* D.I. 341 at 9, 13) According to Plaintiffs, the Court's instruction allowed the jury to find a barring sale even though the sold product failed to embody the claims in question, so long as the jury found that Plaintiffs intended to sell the patented product. (*See id.* at 13) Next, Plaintiffs contend that the Court's instruction regarding the second element of the on-sale bar analysis, i.e., whether the invention was ready for patenting, was incomplete because it failed to inform the jury that the experimental failures experienced by Plaintiffs' manufacturers should be considered in this determination. (*See id.* at 16) As a result, Plaintiffs argue, the jury disregarded this evidence and erroneously concluded that the invention was ready for patenting. (*See id.*) Finally, Plaintiffs emphasize that this evidence was not presented to establish an experimental use exception to the on-sale bar – if established, that exception precludes the finding of a barring

11

offer for sale (the first element of the analysis) – rather, it was presented to show that the second element of the analysis was not established by Defendants. (*See* D.I. 347 at 9)

Regarding Plaintiffs' first contention, Defendants agree the law requires that an embodiment of the claimed invention be offered for sale, but they contend that the Court's instruction as a whole makes this clear. (*See* D.I. 345 at 14-15) On the second issue, Defendants argue the Court's instruction was adequate even with no mention of the experimental failures because Plaintiffs had reduced their invention to practice before these failures, and experimental use cannot occur after reduction to practice. (*See id.* at 16) Since no experimental use defense was raised by Plaintiffs, in Defendants' view it was proper to omit the reference to the difficulties experienced by Plaintiffs' manufacturers. (*See id.*) Defendants also assert there was evidence from which the jury could have found an enabling disclosure prior to the critical date, which is another basis to find the invention ready for patenting, further making the omission Plaintiffs complain of harmless. (*See id.* at 16-17)

### 3.    Decision

The Court is unpersuaded that, when read in its entirety, its instruction on the first element of the on-sale bar analysis was erroneous. As a whole, the instruction made clear that an embodiment of the claimed invention must have been offered for sale to find the claims invalid. Specifically, the instruction read to the jury stated:

> Bath & Body Works contends that claim 1 to 7 and 12 to 18 of the '516 patent are invalid *because the invention defined in these claims was on sale* in the United States more than one year before the effective filing date of the '516 patent. An inventor may not commercially exploit *her invention* by selling or offering it for sale more than one year before the effective filing date of the patent because this has the effect of extending the term of the patent.

12

> ***Thus, the patent-in-suit is not valid if you find, by clear and convincing evidence, that the invention claimed in the patent-in-suit was on sale before June 13, 1994.***
>
> To prove that an invalidating sale occurred, Bath & Body Works must establish by clear and convincing evidence that, before June 13th, 1994, the product was the subject of a commercial offer for sale, and, the invention was ready for patenting. To determine if the product was subject to a commercial offer for sale, you must determine, first, whether there was a commercial offer for sale, and, second, ***whether that offer was for the patented invention.***

(Tr. at 700-01) (emphasis added)  When viewed in its entirety, the instruction directed the jury that, to invalidate the claims, it was required to find an offer of the patented invention. "The product" referred to in the portion of the instruction most heavily criticized by Plaintiffs is "the invention claimed in the patent-in-suit."  Even assuming the use of the word "product" was erroneous, the instruction went on to explain that "to determine if the ***product*** was subject to a commercial offer for sale" the jury must find that the "offer was for the patented invention." (*Id.*)

In any event, any supposed error would be harmless because the jury had sufficient evidence from which to conclude that the sold product met the limitations of the invalidated claims. *See supra* Part III.A.3.  "[I]t is highly probable that the error," assuming there was one, "did not affect the outcome of the case," *Forrest v. Beloit Corp.*, 424 F.3d 344, 349 (3d Cir. 2005), since the jury was just as likely to find an invalidating sale even under Plaintiffs' proposed instruction.

The Court also finds its instruction on the second element of the on-sale bar analysis proper. The manufacturing difficulties experienced by Plaintiffs ***are*** relevant to this issue, as the

13

Court noted in its summary judgment analysis. (*See* D.I. 301 at 8) Thus, when giving the

disputed instruction, the Court told the jury that "[t]he claimed invention is ready for patenting

when there is reason to believe it would work for its intended purpose." (Tr. at 701) It follows

that when there is reason to believe the invention would not work for its intended purpose (such

as manufacturing difficulties), the invention is not ready for patenting. But the Court was not

required to explicitly draw attention to the difficulties. It is for the jury to decide what weight to

accord the evidence presented at trial, *see Acumed LLC v. Advanced Surgical Servs., Inc.*, 561

F.3d 199, 211 (3d Cir. 2009), and explicitly instructing the jury to consider the manufacturing

difficulties could have amounted to the Court improperly assigning weight to this evidence.

Accordingly, the Court refuses to grant a new trial on the basis of its jury instructions.[4]

### C.     Expert Testimony on Invalidating Sale

#### 1.     Applicable Legal Principles

An expert witness' report must contain "a complete statement of all opinions the witness

will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). If expert

testimony given at trial was not sufficiently disclosed in the expert's report, the objecting party

must also demonstrate that it suffered undue prejudice before the Court determines that a new

trial is required. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F.

Supp. 2d 568, 581 (D. Del. 2008). When testifying at trial, however, expert witnesses are

allowed to elaborate on the opinions set out in their expert reports; this elaboration is not

---

[4]The Court also will deny Plaintiffs' request for judgment as a matter of law based on
erroneous jury instructions. Plaintiffs' burden for justifying judgment as a matter of law is higher
than their burden to obtain a new trial. *See supra* Part II. Having failed to meet the lower
burden, they likewise have failed to meet the higher burden.

14

improper evidence. *See Forest Labs., Inc. v. Ivax Pharm., Inc.*, 237 F.R.D. 106, 113 (D. Del. 2006).

### 2.    Parties' Contentions

Plaintiffs argue that Defendants elicited from their invalidity expert, Dr. Lochhead, testimony that was beyond the scope of his expert report. (*See* D.I. 341 at 18; D.I. 347 at 9) Specifically, Plaintiffs take issue with Dr. Lochhead's testimony that an invalidating sale was made, as his report made no mention of the first element of the on-sale bar analysis and opined only that the invention was ready for patenting on October 4, 1993. (*See* D.I. 347 at 17-19) According to Plaintiffs, this testimony was highly prejudicial because it was the only evidence contradicting Ms. Mansouri's testimony that no invalidating sale was made. (*See* D.I. 347 at 10)

Defendants respond that the disputed testimony was a permissible elaboration of Dr. Lochhead's report, so no new trial is warranted. (*See* D.I. 345 at 18) Defendants also contend that Plaintiffs suffered no undue prejudice because Dr. Lochhead merely stated that he had "no reason to doubt" that the product was sold, and he had previously testified that he was not a marketing expert. (*See id.*) Defendants further argue that Dr. Lochhead's testimony mirrored Ms. Mansouri's testimony on this issue. (*See id.*)

### 3.    Decision

The Court finds that a new trial is not warranted on this ground because the disputed testimony was not unduly prejudicial to Plaintiffs. *See Power Integrations*, 585 F. Supp. 2d. at 581. Even without this portion of Dr. Lochhead's testimony, the jury had sufficient evidence to find a barring sale. *See supra* Part II.A.3. The test results and sales documents presented by

Defendants were enough evidence from which the jury could find a barring sale, even had Ms. Mansouri's testimony been otherwise uncontradicted.  Moreover, Dr. Lochhead himself admitted he was not an expert on the first prong of *Pfaff* (*see* Tr. at 456), reducing the likelihood of the jury placing significant weight on his testimony on this point.  Accordingly, even if Dr. Lochhead's testimony was beyond the scope of his report, a new trial is not justified.

## VI.    CONCLUSION

For the reasons discussed, the Court will deny Plaintiffs' Renewed Motion for Judgment as a Matter of Law or in the Alternative for a New Trial.  (D.I. 340)  An appropriate Order will be entered.